Carol **BURCHILL**, Plaintiff

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA and UnumProvident Corporation**, Defendants.

No. 03–CV–67–P–S.

United States District Court, D. Maine.

July 30, 2004.

42

Jon Holder, Holder & Grover, Portland, ME, for Carol Burchill.

Patricia A. Peard, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, Ronald W. Schneider, Jr., Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Unumprovident Corporation, Unum Life Insurance Company of America.

## ORDER

SINGAL, Chief Judge.

Plaintiff Carol Burchill alleges that Unum Life Insurance Company of America and UnumProvident Corporation (together "Defendants" or "Unum") unlawfully denied her long term disability benefits. Through this action, she seeks relief pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Presently before the Court are: Defendants' Motion for Summary Judgment (Docket # 40), Plaintiff's Motion for Summary Judgment (Docket # 42) and Defendants' Motion to Strike Portions of Plaintiff's Objection to Defendants' Statement of Material Facts (Docket # 58). For the reasons set forth below, Defendants' Motion to Strike is DENIED, Defendants' Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

During the time that the Court has had the above motions under advisement, it has also received Plaintiff's Objection to Magistrate Judge Kravchuk's Denial of Plaintiff's Motion for Reconsideration (Docket # 68). The Court has fully consider the arguments presented in that Objection as well as the underlying motions in the course of deciding the pending cross motions for summary judgment. That said, because the Court does not believe that the Magistrate Judge's Order Denying Plaintiff's Motion for Discovery and Reconsideration (Docket # 66) is clearly erroneous or contrary to law, the Court finds Plaintiff's Objection to be without merit. Thus, to the extent Plaintiff seeks to have the Magistrate Judge's ruling modified or set aside pursuant to Federal Rule of Civil Procedure 72(a), the Court DENIES Plaintiff's Objection (Docket # 68).

## I. Motion to Strike

Before turning to the merits of the cross motions for summary judgment, the Court must resolve Defendants' Motion to Strike. This Motion was filed in connection with the statements of material fact, which each side was required to file in accordance with Local Rule 56. Through this Motion, Defendants object to almost all of Plaintiff's responses that consist of anything more than "Admitted." Most, if not all, of Defendants' objections have some merit in that they detail Plaintiff's failure to comply with either the letter or the spirit of Local Rule 56. Nonetheless, in this Court's assessment, conducting an intensive line-by-line review of Plaintiff's violations of Local Rule 56 would do little to assist the Court in achieving the goals of this local rule or resolving the merits of the pending cross motions for summary judgment. Thus, in an exercise of its discretion, the Court DENIES Defendant's Motion to Strike.

In general, Local Rule 56 contemplates that the Court will discount any statement of material fact or a response thereto that contains irrelevant argument or factual assertions that are not supported by appropriate record citation. *See* Local Rule 56(e). In accordance with these principles, the Court has disregarded most of the objectionable portions of Plaintiff's Objections to Defendants' Statement of Material Facts (Docket # 52) brought to the Court's attention through Defendants' Motion to Strike. Moreover, the Court notes that its view of the facts and decision on the merits would not be changed even if it had considered Plaintiff's objections.

Having conducted a complete review of both sides' statements of material facts and the responses thereto, it is clear that the only relevant factual disputes between the parties center on disagreement regarding attempts by both sides to summarize, excerpt and characterize various cited portions of the administrative record at issue in this case. The Court has resolved these disputes by conducting a first-hand review of the administrative record, focusing on the pages cited by the parties.[1] In accordance with this procedure, the Court lays out the material facts below as gleaned from the parties' submissions and the Court's review of the administrative record.

## II. Cross Motions for Summary Judgment

### A. Standard of Review

Generally, a party is entitled to summary judgment if, on the record before the court, it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if it could be resolved in favor of the nonmoving party by a rational fact finder drawing reasonable inferences. *See, e.g., Ward v. Mass. Health Research Inst.*, 209 F.3d 29, 32 (1st Cir.2000). A fact is "material" if it could affect the outcome of the case under governing law. *See, e.g., Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). As the First

Circuit has noted, the mere existence of cross motions for summary judgment generally does not change the method for construing the facts. *See Leahy v. Raytheon Co.*, 315 F.3d 11, 17 n. 5 (1st Cir. 2002). In accordance with this standard, the Court has gleaned the following undisputed facts from the administrative record:

### B. Background

#### 1. Plaintiff's Unum Insurance Policy

Plaintiff Carol Burchill ("Burchill") worked as an administrative assistant at Woodard & Curran, Inc. through June 2000. As an employee of Woodard & Curran, Burchill was covered by a group disability insurance policy issued by Unum Life Insurance Company bearing the Policy Number 500848 (the "Policy" or "Plan"). The Policy covered both short term and long term disabilities. Within the body of the Policy the term "UNUM" is used to refer to Unum Life Insurance Company. The Policy Certificate Section explicitly states: "When making a benefit determination under the policy UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (UACL 460.)[2]

In relevant part, the Policy provides that for both short term and long term disabilities:

> You are disabled when UNUM determines that:

---

1. In many other cases, the Court might well resolve these issues related to the argumentative nature and mischaracterization of the stated material facts by summarily denying the motions for summary judgment on the basis of genuine issues of material fact. However, there is no doubt that this is a case that is properly resolved via the pending cross motions for summary judgment and the Court sees no reason to delay resolution of Plaintiff's claim. *See Curtin v. Unum Life Ins. Co.*, 298 F.Supp.2d 149, 152 (D.Me.2004) ("In

ERISA cases where the decision is to be made by the court based solely on the administrative record, summary judgment is 'merely a mechanism for tendering the issue.'") (quoting *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 24 (1st Cir.2003)).

2. The Court has been provided with a copy of the full administrative record in this case containing a "UACL" Bates prefix. As necessary, the Court's Order will refer to the administrative record by using these Bates numbers.

— you are limited from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

— you have a 20% or more loss in weekly earnings due to the same sickness or injury.

(UACL 457 & 471.) The Policy goes on to define the term "limited" as "what you cannot or are unable to do" and the phrase "material and substantial duties" as those "duties that are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified." (*Id.*) The definitions of both "sickness" and "injury" specifically state that "[d]isability must begin while you are covered under the plan." (*Id.*)

In order to receive benefits, the Policy requires a claimant to submit a "proof of claim" that includes proof that the claimant is "under the regular care of a doctor." (UACL 444.) "Regular care" is further defined as "you personally visit a doctor as frequently as is medically required, according to standard medical practice, to effectively manage and treat your disabling condition(s); and you are receiving appropriate treatment and care of your disabling condition(s) by a doctor whose specialty or experience is appropriate for your disabling conditions." (UACL 443.)

Assuming a claimant provides adequate proof of a claim, the Policy also requires a waiting period, referred to as an "elimination period." For short term disability benefits the elimination period is 30 days and for long term disability benefits the elimination period is 90 days. In order to collect benefits pursuant to the terms of the Policy, a claimant must be continuously disabled for the entire elimination period.

The Policy provides that coverage generally continues as long as you continue to be in active employment. The Policy also extends coverage to those who were not in active employment because they were disabled under the terms of the Policy. But for this exception, an employee's coverage generally ceased if they ended their employment with Woodard & Curran.

### 2. Plaintiff's Medical Condition & Claim for Benefits

On July 12, 2000, Carol Burchill filed an initial claim for disability benefits. On that claim form, Burchill reported that she first began experiencing symptoms of fatigue, muscle aching, stiffness, pain-induced depression, sleep disturbances, soft tissue swelling, tingling in limbs and memory impairment in November 1999. She further reported that she first received treatment for these ailments some time in April 2000. As of June 21, 2000, Burchill found herself unable to continue working as an administrative assistant because of the above-described ailments.

In connection with her departure from work, Burchill initially saw four different medical providers-each of whom ultimately submitted treatment records and/or statements to Unum in connection with its review of Burchill's claim for benefits.

#### a. Dr. Shuman

In connection with her initial claim for short term disability benefits, Burchill's primary care physician, Dr. Shuman, submitted an Attending Physician Statement dated July 6, 2000. In this Statement, Dr. Shuman reported seeing Burchill on both June 21, 2000 and July 6, 2000. He listed his diagnosis as "myalgias" and "depression" and categorized Burchill's physical and mental impairment as "Class 3"-meaning he thought she had "slight limitation of functional capacity; capable of light work" and that she was "able to engage in only limited stress situations . . . and limited interpersonal relations (moderate limitations)." (UACL 012.) Nonetheless, Dr. Shuman also classified Burchill as unable

to work in her own occupation or any other occupation.

On August 8, 2000, Unum sent Dr. Shuman a series of written follow-up questions seeking additional information. In response, Dr. Shuman wrote: (1) that a diagnosis of fibromyalgia had been made by Dr. Keroack, a rheumatologist, and that blood tests had ruled out connective tissue disease; (2) that "no testing [had been] done" of Burchill's symptom reporting patterns; (3) that Burchill had chronic pain with symptoms made worse by stress of work; (4) that Burchill had not been referred for any neuropsychiatric treatment; and (5) that Burchill's daily activities were impacted by her condition, noting that Burchill reported a "hard time" getting dressed. In response to a question about whether there were conditions under which Burchill could return to work, Dr. Shuman noted that Burchill was "not capable of working" and that Burchill felt that "light duty would expand to full duty." (UACL 021–022.)

In a September 6, 2000 Physician Statement filed in conjunction with Burchill's claim for long term disability benefits, Dr. Shuman noted that he was still seeing Burchill on a monthly basis. His statement listed "stress on job" as a secondary condition contributing to Burchill's disability. (UACL 014.) As to Burchill's restrictions, he listed only that she should not "work in a stressful environment." (UACL 013.) As to her limitations, Dr. Shuman reported that Burchill "can't sit or stand for long periods of time[;] can't get up and down out [sic] of chairs frequently." (Id.) In an assessment that is confusing at best, Dr. Shuman went on to explain that Burchill's condition is "chronic" and that he expected her "to remain the same" but also noted that she has not achieved maximum medical improvement and that he expected to see fundamental changes in Burchill's condition in three to four months. (Id.)

### b. Dr. Bigos

On July 17, 2000, Burchill saw her regular endocrinologist, Dr. Bigos, who had previously treated Burchill for hypothyroidism.[3] The treatment notes that Unum received from Dr. Bigos noted that Burchill was complaining of "multisite muscle discomfort" and pain induced mood changes. However, Burchill apparently reported that her pain had decreased with the help of medication and decreased stress (as a result of being out of work). Dr. Bigos also reported "modest improvement" in Burchill's fatigue. (UACL 35.) Dr. Bigos noted that Dr. Shuman had made a working diagnosis of fibromyalgia. Ultimately, Dr. Bigos concluded that Burchill should plan on returning for her next thyroid check-up in one year. His notes included no assessment of Burchill's ability to work.

### c. Dr. Keroack

Dr. Shuman referred Burchill to a rheumatologist, Dr. Keroack, for evaluation. Burchill first saw Dr. Keroack on July 24, 2000. Unum received a copy of Dr. Keroack's treatment notes in August 2000. Dr. Keroack's summarized the July 24, 2000 examination as follows: *"PROBLEM # 1: Generalized myalgia, fatigue, arthralgias.* I think this patient likely has fibromyalgia. She has multiple other issues including mood swings, fatigue, sleep disturbance and significant weight gain. The piece of the puzzle that is missing under these circumstances is usually low impact aerobic exercise. The patient states that she

---

**3.** Apparently, all of Burchill's treating physicians, as well as Burchill herself, agreed that her May 1999 diagnosis of hypothyroidism had been corrected by June 2000 and did not contribute to the symptoms that caused her to stop working.

has tried that somewhat, but it has made her symptoms worse which is classic for fibromyalgia. We encouraged her to get going on a gradually increasing low-impact aerobic exercise program as I explained to her. That is the most important ingredient in improvement of symptoms." (UACL 025 & 059.)

In a letter to Dr. Shuman following his appointment with Burchill, Dr. Keroack explained that he had ruled out collagen vascular disease and systemic lupus. He concluded that "[h]er signs and symptoms are most consistent with fibromyalgia." (UACL 056.) He went on to explain that he was recommending a therapeutic regimen of "low-impact aerobic exercise ..., weight loss and improved conditioning" and leaving to Dr. Shuman the question of whether Burchill would benefit from a prescription of antidepressants in addition to the therapies he had already prescribed.

### d. Pamela Morgan, Physical Therapist

Burchill also underwent a physical therapy evaluation on August 14, 2000. The evaluation found "protective muscle spasming," decreased range of motion, "biomechanical dysfunction throughout the pelvis, sacrum and spine" as well as gait deviations. On a scale of one-to-ten, Burchill reported that her pain rated as nine on average. Initially, Ms. Morgan recommended physical therapy twice a week for one month. The expressed functional goals of Burchill's physical therapy plan were to make: "Patient able to perform full pain free [range of motion] throughout with no gait deviation present and little to no biomechanical dysfunction. Patient able to perform all [activities of daily living] and work-related activities without an increase in discomfort." (UACL 409.)

### 3. Unum's Initial Review of Burchill's Claim

In addition to gathering the medical information described above, Unum also conducted a phone interview with Burchill in July 2000. During that phone interview, Burchill apparently admitted being able to perform all of the listed "activities of daily living." She described her symptoms as: "Chronic muscle aches, fatigue, sleep disturbance, pain induced depression, tingling in limbs, [and] soft tissue swelling." (UACL 077.)

In conjunction with her claim for benefits, Unum also reviewed the requirements of Burchill's occupation. As a result of that review, Unum determined that Burchill's administrative assistant position at Woodard & Curran was a sedentary occupation. Upon review of occupational information provided by both Burchill and her employer, Unum also noted that Burchill's occupation required: "Continuous interpersonal, written and verbal communication; Frequent cognitive functioning; Alternates [between sitting and standing] 2hrs, walk[ing] 4hrs; Occasional balance/stoop/crouch/reach overhead/climb stairs; Occasional lift/move boxes [weighing] 25–30 pounds; Use of both hands for frequent typing and occasional binding/copying." (UACL 292.) According to her employer, Burchill's job could be performed by alternating sitting and standing. (UACL 007.)

Ultimately, Unum sent the information it collected from Burchill, her employer and her treatment providers for a medical review on the papers in October 2000. The impression of the nurse reviewer was that the information did not support a finding that Burchill was disabled "despite [her] subjective pain and depression complaints, which she states increase with work stressors." (UACL 292.) The review noted that Burchill's rheumatologist

had recommended low-impact aerobics. Ultimately, the medical review concluded: "It would appear that based on her ability to participate in an exercise program, her self-reported ability to perform [activities of daily living] and MD recommendation for continued activity, that [Burchill's] functional capacity meets or exceeds her sedentary to light occupational requirements, does not support impairment, and should, therefore, not preclude her from working." (UACL 292.)

Unum then sent Burchill a letter dated October 11, 2000 reiterating this conclusion and denying her claim for short term disability benefits.[4] Despite Unum's decision on Burchill's claim for short term benefits, it appears that Unum continued to conduct a separate review of Burchill's claim for long term benefits after October 11, 2000. In connection with that review, a Unum representative conducted another phone interview with Burchill on November 16, 2000. In that interview, Burchill informed Unum that she had hired an attorney. She reported similar symptoms of chronic pain and fatigue. When asked what led to her stopping work, she apparently explained that "[p]ain and stress at work made it unbearable to continue to work." (UACL 086.) She also indicated that she had completed a two month regimen of physical therapy in October but experienced no relief for pain or fatigue. As to her own self-reported restrictions and limitations, Burchill explained that she was not capable of repetitive movement, physical activity, sitting, standing or lifting. She also reported being unable "to think for any length of time." (UACL 086.) When asked about the physical requirements of her old job, Unum's notes indicate that Burchill explained that she was "[a]t a computer all day long. Had to sit and stand throughout the day. Some lifting less than 10 [pounds]. Cannot sit prolonged periods of time, cannot use mouse at computer, cannot walk or stand for long periods of time." (*Id.*)

After conducting another vocational review as well as a review of the medical information supplied by Burchill's treatment providers, Unum sent Burchill a letter dated January 5, 2001 informing her that it was denying her claim for long term disability benefits on the same basis that it had denied her earlier claim for short term disability benefits.[5]

### 4. Burchill's Appeal of Unum's Initial Denial

In a letter dated January 8, 2001, Mr. Holder, counsel for Burchill, informed Unum that Burchill wished to appeal Unum's decision to deny her both short term and long term disability benefits. This letter stated that there was "no new evidence NOW related to this case" but requested additional time to obtain "new and relevant evidence." (UACL 107 & 108.) Mr. Holder followed up with another letter dated January 30, 2001 informing Unum that Burchill had been awarded Social Security Disability benefits. In this letter Holder requested an additional sixty days "to gather additional medical records and doctor's reports" as well as records from the Social Security Administration. (UACL 116.)

---

4. Although this letter came from Unum Life, the closing paragraph of the letter referenced UnumProvident noting that "[i]f *Unumprovident* does not receive your written appeal within 90 days of the date of this letter, our claim decision will be final." (UACL 280 (emphasis added).)

5. Like the previous October 11, 2000 letter, this denial letter included a similar reference to UnumProvident in the final paragraph although the letter appeared to come from Unum Life.

In a letter dated February 1, 2001, Unum acknowledged receipt of Burchill's request to appeal and advised that it would attempt to decide the appeal within sixty days. Unum's review on appeal included a vocational evaluation in which it again concluded that an administrative assistant position was essentially a sedentary occupation that allowed for discretionary changing of one's position (i.e. sitting versus standing) throughout the day. In a letter dated February 16, 2001, David Veilleux, a senior appeal specialist for Unum, informed Mr. Holder that Unum was upholding its previous decisions to deny Burchill both short term and long term disability benefits. Although this letter made no reference to Mr. Holder's letter of January 30, 2001, Unum's letter did address the first request for more time to gather additional information. Specifically, the letter noted that the terms of the Policy required that any proof of claim must be received by Unum within 30 days of its request for information. Thus, the letter explicitly requested any new or additional information be sent to Unum within 30 days.

In a letter dated March 1, 2001, Mr. Holder wrote Unum protesting its "ultra-typical rubber stamp denial" and requesting that Burchill's claim remain open in anticipation of additional forthcoming information. (UACL 134.) On March 13, 2001, Mr. Holder sent Unum a report from Dr. Meryl Nass. Unum subsequently requested additional medical records from Dr. Nass. These records show that Dr. Nass saw Burchill on February 5, 2001 and again on March 5, 2001. Based upon these visits, Dr. Nass had diagnosed Burchill with fibromyalgia. Dr. Nass also noted that Burchill met the "criteria for chronic fatigue with activity level less than 50% of pre-illness level, duration greater than six months of continuous fatigue, memory loss, muscle and joint pain, unrefreshing sleep and post exertional malaise." (UACL 155.) Nass' reports also provided a detailed description of the physical impairments and pain that Burchill was experiencing as of February 2001.

In light of the new medical information from Dr. Nass, Unum sent Burchill's file for a medical review. The review was done Dr. Rick Snyder, D.O., M.P.H., who wrote a report dated April 25, 2001. The medical review report framed with the following question for review: "Does the new information from Dr. Nass support any restrictions or limitations of the claimant as of 6/22/00, her last day of work, and does the new information from Dr. Nass alter the conclusions of the on-site physician review dated 10/5/00?" (UACL 186.) Dr. Snyder provided a five page answer to this question that concluded with his opinion that the newly submitted medical information did not support a finding that Burchill was restricted from working as a result of fibromylagia or chronic fatigue. The review also included his opinion that Burchill "likely [has] psychosocial issues that are not being addressed." (UACL 183.)

Following this medical review, Unum sent Mr. Holder a letter stating that it was upholding its original decisions to deny Burchill benefits under the Policy. As the basis for that decision, the letter, dated May 3, 2001, noted that: (1) "Burchill is able to perform the material and substantial duties of her regular occupation" and (2) "Burchilll has not received regular and appropriate care and, as such, has not provided appropriate proof of claim as required by her policy." (UACL 188–89.) The letter went on to explain that Burchill's coverage under the Policy had ceased as of June 22, 2000. Thus, "UNUM would not be responsible for any claim for disability which is established to have arisen on or after this date." (UACL 188.)

Unum then received an additional letter from Dr. Nass dated May 25, 2001. At

this point, Dr. Nass had seen Burchill on four occasions and opined that Burchill was "one of the most seriously impaired" patients with fibromyalgia and/or chronic fatigue syndrome she had seen. Despite this additional letter from Dr. Nass, Unum sent Mr. Holder a letter dated June 20, 2001 informing him that they were standing by their previous decision and that Burchill had exhausted her administrative remedies.

One might have imagined that this "exhaustion of administrative remedies" letter from Unum would have ended the dialogue between these parties but in fact the dialogue continued. In the months that followed, Dr. Nass called Unum and subsequently spoke with a Unum in-house physician, Dr. Doane. Dr. Doane then wrote up his own medical file review dated July 12, 2001. Dr. Doane ultimately concluded that there was not medical evidence to support a finding that Burchill was unable to work rather "[a]ny restrictions and limitation would be based on claimant['s] self report of intolerance for activities." (UACL 210.) Dr. Doane also sent Dr. Nass a letter dated July 11, 2001 summarizing their conference call.[6] Unum then followed up with yet another letter dated August 20, 2001 saying that the conversation between Dr. Nass and Dr. Doane had not affected their decision to deny Burchill's claim.[7]

## C. Discussion

### 1. Review of Unum Life's Actions under the Arbitrary and Capricious Standard

■ Following *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct.

948, 103 L.Ed.2d 80 (1989), the denial of benefits by an administrator of a plan covered by ERISA is reviewed by courts using an "arbitrary and capricious" standard if the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See id.* at 115, 109 S.Ct. 948. If the terms of the plan do not give the administrator or fiduciary discretionary authority to determine eligibility or construe the terms of the plan, judicial review proceeds under a *de novo* standard. *See id.* When applying an "arbitrary and capricious" standard of review to a benefits determination, "the district court must ask whether the aggregate evidence, viewed in the light most favorable to the non-moving party, could support a rational determination that the plan administrator acted arbitrarily in denying the claim for benefits." *Leahy v. Raytheon Co.,* 315 F.3d 11, 18 (1st Cir. 2002). The mere existence of contrary evidence does not necessarily render the decision to deny benefits arbitrary. *See, e.g., Vlass v. Raytheon Employees Disability Trust,* 244 F.3d 27, 30 (1st Cir. 2001). Rather, the insurer's decision must be upheld "if it was within [the insurer's] authority, reasoned and supported by substantial evidence in the record." *Boardman v. Prudential Ins. Co.,* 337 F.3d 9, 15 (1st Cir.2003) (quoting *Doyle v. Paul Revere Life Ins. Co.,* 144 F.3d 181, 184 (1st Cir.1998) (alternation in original)).

■ Even Plaintiff appears to concede that the language of the Policy gives Unum Life the discretionary authority necessary to justify this Court applying

---

6. The Court notes that this letter was sent on UnumProvident Corporation stationery but the signature line describes Dr. Doane as "VP, Medical Director, Unum Life Insurance Company." (UACL 220.)

7. The parties in fact exchanged another round of letters regarding whether Dr. Doane and Dr. Nass agreed that Burchill should undergo neuropsychological testing. However, these issues are not material to resolving the cross motion for summary judgment.

the deferential arbitrary and capricious level of review. Thus, the Court begins by asking whether the administrative record viewed in the light most favorable to Burchill suggests that Unum Life's decision to deny benefits was reasonable. In answering this question, the Court does not substitute its own judgment for that of Unum Life. *See Terry v. Bayer Corp.*, 145 F.3d 28, 40 (1st Cir.1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

After reviewing the evidence presented by Burchill on multiple occasions, Unum Life ultimately concluded that Burchill was not "disabled," as that term is defined in the Policy, by her fibromyalgia in the time period that stretched from June 21, 2000 through the end of the elimination periods required under the Policy. Having reviewed the entire record, the Court believes this conclusion was reasonable and substantially supported by the administrative record.

Plaintiff suggests that this case is similar to the case of *Cook v. Liberty Life Assurance Co.*, 320 F.3d 11 (1st Cir.2003). Specifically, Plaintiff appears to argue that Unum cannot deny Burchill benefits simply because she lacked clinical objective evidence that she was suffering from fibromyalgia and/or chronic fatigue syndrome ("CFS"). In *Cook*, the First Circuit held that it was not reasonable for the insurer to "expect [a claimant] to provide convincing 'clinical objective' evidence that she was suffering from CFS." *Cook*, 320 F.3d at 21. In its attempt to distinguish Burchill's case from *Cook*, Unum argues:

> In this case, Unum Life did not challenge Burchill's diagnosis of fibromyalgia but rather challenged the fact that she failed to provide sufficient objective evidence of impairment. With regard to Burchill's claims that she has CFS, a claim that occurred after she was denied

benefits, Unum Life both challenged the appropriateness of the diagnosis and the lack of objective evidence that the illness prevented Burchill from working in her regular sedentary occupation. Burchill fails to understand that a diagnosis of an illness simply does not render one disabled pursuant to the Contract. Burchill failed to demonstrate that she was disabled by her illness.

(Defs. Opp. to Pl.'s Mot. for Summ. J. (Docket # 48) at 3.) Admittedly, the impairments caused by fibromyalgia (and CFS), which include pain and muscle aches, may be no easier to document via objective evidence than the actual diagnosis. Thus, it is not clear exactly what Unum Life could have reasonably considered "sufficient objective evidence of impairment." That said, the Court does agree that the evidence presented in the administrative record does not indicate that Burchill was unable to perform the material and substantial duties of her administrative assistant position because of fibromyalgia during the relevant time period.

In fact, during the time period of June 21, 2000 through September 21, 2000, the reports from Burchill and all of her treatment providers suggest either that she was capable of working and/or that factors other than fibromyalgia were contributing to her inability to work. Dr. Shuman's initial Attending Physician Statement categorized Burchill as suffering from only a "slight limitation of functional capacity." In responding to follow up questions from Unum, Dr. Shuman reiterated that he believed Burchill was not able to work but added that "she feels light duty would expand to full duty." Finally, in his September 6, 2000 statement, Dr. Shuman listed "stress on the job" as a secondary condition contributing to Burchill's disability. Dr. Shuman went on to explain that while Burchill would need accommodations

with respect to alternating sitting and standing,[8] the only restriction was that she should not "work in a stressful environment."

Turning to Burchill's other treatment providers, neither Dr. Bigos, Dr. Keroack, nor Ms. Morgan expressed that Burchill's condition made her unable to work as an administrative assistant. In fact, Dr. Keroack, who made the diagnosis of "likely" fibromyalgia, recommended that Burchill undertake to engage in more physical activity via low-impact aerobics. Although the physical therapy evaluation objectively documented some of the difficulties Burchill was having with her range of movement and muscle aches, the evaluation did not suggest that Burchill was physically unable to engage in sedentary work-related activities. Rather, the evaluation notes that one of the goals of physical therapy would be to allow Burchill to perform work-related activities "without an increase in discomfort." Under the terms of the Policy, Unum Life was not required to pay Burchill benefits simply because performing the material and substantial duties of her occupation increased her discomfort.[9] This is especially true when Burchill herself apparently reported during a phone interview that she was able to complete all of the activities associated with daily living.

Taking the later reports of Dr. Nass at face value, it appears that Burchill's condition had deteriorated by February 2001 (when she began seeing Dr. Nass). Thus, it may well be that any reasonable insurer would have had to conclude that Burchill was disabled under the terms of her Policy at that time. Assuming that were true, Unum was correct when, after reviewing information from Dr. Nass, it explained that under the terms of the Policy Unum "was not responsible for any claim for disability which is established to have arisen on or after" June 22, 2000. For the same reason, Plaintiff's argument that Unum wrongly refused the offer of objective testing in August 2001 misses the mark. The fact remains that no testing or evaluation conducted in mid–2001 could retroactively override the assessments of Burchill's condition in mid–2000 and thereby establish that Burchill was disabled under the terms of the Policy when she stopped working in June 2000.

In short, applying an arbitrary and capricious standard of review to the administrative record, the Court concludes that Unum was well within its discretion when it determined that Burchill was not eligible for benefits under the terms of the Policy.

### 2. Plaintiff's Request for *De Novo* Review

Based on allegations that the decision in this case was actually made or influenced by UnumProvident, Plaintiff argues that she is entitled to *de novo* review of the decision to deny her claim. Pursuant to a *de novo* review, this Court would be re-

---

**8.** Based on the administrative record, it appeared that Burchill's position would have allowed for this accommodation.

**9.** In reaching this conclusion, the Court is aware that a symptom such as pain exists on a continuum. At some point, it may well be that working might aggravate the pain associated with an underlying illness such that that the afflicted individual sincerely becomes unable to work. In this case, the physical therapy evaluation and the treatment notes from

Burchill's physicians documented Burchill's subjective complaints of · pain. However, none of these reports suggested that Burchill was physically incapable of functioning in a sedentary occupation or offered any objective measure of the extent to which Burchill's functional capacity was limited by her pain. *See, e.g., Gannon v. Metropolitan Life Ins. Co.,* 360 F.3d 211, 213 (1st Cir.2004) (finding "it was appropriate for the physical therapist ... to assess the extent to which [a claimant's] pain limited her functional capabilities").

quired to examine the administrative record through a less deferential lens and thereby determine whether Defendants' decision to deny Burchill's claim was correct.

Plaintiff's argument raises two questions, one factual, the other legal. Factually, the Court would need to determine: what role did UnumProvident (the ultimate parent holding company of Unum Life) play in Unum Life's discharge of its fiduciary duties under the Policy? Legally, the Court would need to address: what influence or role, if any, may a parent holding corporation have in the discharge of fiduciary duties by an indirect wholly owned subsidiary when only the subsidiary possesses explicit discretionary authority under the plan?[10] The parties' briefs, along with the materials and cases cited in support of their cross motions, do not offer much assistance in answering either of these questions.

■ In support of her argument that UnumProvident's alleged involvement in the decision to deny Burchill benefits requires this Court to conduct a *de novo* review, Plaintiff cites *Rodriguez–Abreu v. Chase Manhattan Bank,* 986 F.2d 580 (1st Cir.1993). In the portion of the *Rodriguez–Abreu* decision relevant to the issue-at-hand, the First Circuit affirmed the decision of the district court to conduct a *de novo* review when the evidence showed that all communication regarding a decision to deny benefits came from a plan administrator who was not granted or delegated discretionary authority under the terms of the plan at issue. *Id.* at 583–85. In other words, *Rodriguez–Abreu* stands for the proposition that only those fiduciaries who are explicitly granted or delegated discretionary authority under the terms of the plan are entitled to have their decisions reviewed under the deferential "arbitrary and capricious" standard of review. Thus, when a decision to deny benefits is made by a person or entity without explicit discretionary authority, the Court should conduct a *de novo* review. *See, e.g., Rubio v. Chock Full O'Nuts Corp.,* 254 F.Supp.2d 413, 425 (S.D.N.Y.2003); *Davidson v. Liberty Mutual Ins. Co.,* 998 F.Supp. 1, 8–9 (D.Me.1998).

It is undisputed that UnumProvident Corporation was not granted or delegated any discretionary authority under the terms of this Policy. Thus, if UnumProvident, rather than Unum Life, decided to deny Burchill's claim, Plaintiff would arguably be entitled to *de novo* review. However, the record before the Court does not establish that Plaintiff's claim was denied by UnumProvident, nor does it create a trialworthy issue as to whether UnumProvident denied Burchill's claim.[11] *See Sidou v. Unumprovident Corp.,* 245 F.Supp.2d 207, 219 (D.Me.2003). In fact, the letters sent to Burchill suggest that

---

**10.** The corporate relationship between Unum-Provident and Unum Life was previously described for the Court in the Affidavit of Susan N. Roth, dated April 23, 2003 (Ex. 2 to Docket # 5).

**11.** Although the evidence appears to be lacking, Plaintiff clearly states her factual allegation as follows: "Employees of Unum Life Insurance Company of America (Unum Life) had absolutely nothing to do with the administration and denial of the Plaintiff's claim. Every signal [sic] employee who had any effect or any participation in the claims deci-

sion denying Carol Burchill benefits was an employee of UnumProvident, not Unum Life. Accordingly, Unum Life Insurance Company of America did not control the administration of the plan, but Unum Provident did." (Pl.'s Obj. To Defs.' Statement of Material Facts (Docket # 52) at 7 n. 2.) If, as it appears, Plaintiff was unable to muster the evidence necessary to contest summary judgment on this issue, Plaintiff was obliged to seek relief pursuant to Federal Rule of Civil Procedure 56(f). However, Plaintiff did not file such a motion.

Unum Life, the entity that held discretionary authority under the terms of the Policy, in fact, denied Burchill's claim.[12]

Assuming for the moment that Plaintiff could establish that UnumProvident played an improper role in denying her claim and thereby open the door to *de novo* review, such a review would not change the outcome of this case. Rather, based on the administrative record, the Court would conclude that Burchill did not establish that she met the requirements to receive benefits under the Policy and, thus, the decision to deny Burchill's benefits was correct. In light of the Court's conclusion that the same outcome is warranted in this case under either *de novo* or arbitrary and capricious review, the Court need go no further in addressing the factual and legal questions regarding what role, if any, UnumProvident played in the decision to deny Burchill benefits.

## III. Conclusion

For the reasons explained above, the Court DENIES Defendants' Motion to Strike, DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendants' Motion for Summary Judgment. In light of these rulings, the Court hereby ORDERS the Clerk to enter judgment in favor of Defendants.

SO ORDERED.

12. The Court reached this conclusion despite Plaintiff's "offer of proof" which was improperly buried in Plaintiff's Response to Defendants' Statement of Material Fact # 66. (*See* Pls. Obj. to Defs.' Statement of Material Facts (Docket # 52) at 26.) The Court notes at the onset that this particular response clearly violates Local Rule 56 and, for that reason, Defendants correctly moved to strike the response. Although it does not appear that Plaintiff ever filed some of the affidavits referred to in that paragraph, the Court has considered the representations in the response paragraph # 66 along with the documents Plaintiff attached to Docket # 18 (Form B) and Docket # 31. In the Court's assessment, these proffers do not amount to a production of "specific facts, in suitable evidentiary form, [that] establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999). Nonetheless, the Court acknowledges that the docket in this case is replete with Plaintiff's belated and unsuccessful attempts to obtain further discovery on this "Unum-Provident issue." (*See, e.g.,* Docket # s 39 & 66.) It is for this very reason that the Court has taken the time to consider whether a *de novo* review would change the outcome of this case. However, having reviewed the administrative record, the Court concludes the outcome would be the same, thereby making any additional discovery on the "UnumProvident issue" futile.